UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SIDNEY PRICE and RICHARD PRICE,

                    Plaintiffs,

     v.

PARAMOUNT TELEVISION, a division of
PARAMOUNT PICTURES CORPORATION,

                    Defendant.
-----------------------------------------------------------------X

Index No. _____

COMPLAINT

<u>JURY TRIAL DEMANDED</u>

      Plaintiffs, Sidney Price and Richard Price (collectively, "**Plaintiffs**"), by and through their undersigned counsel, hereby complain of the Defendant, Paramount Television, a division of Paramount Pictures Corporation ("**Paramount**" or "**Defendant**"), alleging as follows:

### NATURE OF THE ACTION

      1.     This is an action for damages incurred by the unlawful acts of Paramount, arising under contract and tort law, during the course of its filming of the upcoming television series ("**Maniac**") at Sidney Price's residence in Valley Stream, New York.

### JURISDICTION AND VENUE

      2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

      3.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### THE PARTIES

      4.     Plaintiff Sidney Price, age 92, is an attorney and CPA residing at 729 Sherwood Street, Valley Stream, New York 11581 (the "**Residence**").  He is a World War II veteran who flew forty-four combat missions as a Tail Gunner on a B-24 against Japan over the South Pacific.

5.     Plaintiff Richard Price is a CPA residing at  930 Jewel Drive, Valley Stream, New York 11581.  Richard Price is the son of Sidney Price.  Richard and Sidney Price own Price & Co., an accounting, auditing, consulting, and tax firm, which maintains its office on the basement level of the Residence.  Price & Co. maintains a website at www.price-co.com.  Richard Price also runs a memorabilia business headquartered at the Residence and he stores its merchandise on the main level and second floor of the Residence.

6.     Defendant Paramount is a Delaware Corporation with its principal place of business at 5555 Melrose Avenue, Los Angeles, California 90038.

## FACTUAL ALLEGATIONS

7.     In June 2017, a flyer was left at the Residence, stating that Paramount Pictures was scouting locations for an upcoming Netflix series entitled "Maniac" that would be starring Emma Stone and Jonah Hill.

8.     Richard Price responded to the flyer, notifying Paramount that Sidney Price was interested in contracting with Paramount for filming at the Residence.

9.     Thereafter, in or about mid-June, various persons from Paramount came to inspect the Residence, approximately three times.  These persons took numerous photographs of the Residence.

*The Location Agreement*

10.     On or about September 11, 2017, Sidney Price (the "**Licensor**") entered into a contract with Paramount (the "**Company**"), effective September 11, 2017 ("**Location Agreement**"), permitting Paramount certain filming rights regarding Maniac.  A copy of the Location Agreement is attached hereto as Exhibit A

11.     Paragraph 1 of the Location Agreement granted Paramount the right "to enter and use only the first floor" of the Residence.  It stated in relevant part as follows:

2

1. <u>Rights Granted</u>:  Licensor [Sidney Price] hereby grants to Company, its employees, agents, contractors and suppliers, and such other parties as it may authorize or designate, the right to enter and use <u>only the first floor</u> of the property located at 729 Sherwood St., Valley Stream, NY 11581 (the "Property") for the purpose of photographing and filming (whether via motion pictures, still, video, device or other type of photography scenes of the Production, which permission includes access to and from the Property, including the interiors and exteriors thereof, the right to bring and utilize thereon personnel, personal property, material and equipment, the right to photograph and make sound recordings on the Property, town)  including the furniture, fixtures and other contents (and the right to rearrange same), the right to use any names verbiage, address, trademarks, logos, signs and identifying features located on the Property, the right to refer to the Property or any part thereof by any fictitious name and/or to attribute any fictitious events as occurring thereon, and the right to otherwise do all things reasonably necessary to carry out the production of the Production. . . . (emphasis added).

12.    The Term of the Location Agreement was for ten days, commencing on or about September 12, 2017 and ending on or about Thursday September 21, 2017.

13.    The Term called for approximately (i) four "prep" days; (ii) one "shoot" day; and (iii) three "wrap" days, subject to change as required by Paramount.

14.     The agreed Location fee was for a flat sum of $15,500, which was calculated as follows:  (i) four "prep" days at $1500 each; (ii) one "shoot" day at $5000; and (iii) three "wrap days at $1500 each.

15.    Paragraph 5 of the Location Agreement stated as follows:

<u>Use and Repairs</u>:  Company agrees to leave the Property in as good order as when received by Company, reasonable wear and tear excepted.  Licensor shall submit a written list notifying Company of all claimed damage to the Property within ten (10) business days following the date that Company vacates the Property, and Licensor shall permit Company to inspect the alleged damage, if any.  Provided that Company timely receives a written list of claimed damage and is afforded an opportunity to inspect same, Company shall repair any actual and verifiable damage to the Property directly caused by Company's use thereof (or shall arrange for the repairs to be made by contractors selected by the Company), provided, however, that Company shall not be obligated to repair any damage to the Property caused by or contributed to by Licensor.  Company agrees to not smoke inside of the Property.

*The Work Notes*

16.     Following completion of filming, Richard Price found "Work Notes" at the Residence, which were dated August 2, 2017.  A copy of these "Work Notes" is attached hereto as Exhibit B.

17.     These Work Notes, which were written before the Location Agreement was executed, called for work that far exceeded the Rights Granted clause (Paragraph 1) of the Location Agreement, including:

- extend the kitchen island;

- remove window for camera access;

- change/fix front door hardware;

- fix existing front door trim;

- paint to match counter top finish;

- paint to match wood stain on counters; and

- paint to tie in new patch of sidewalk concrete to existing

18.     The Work Notes called for changes to the outside shrubbery that exceeded the scope of the Location Agreement, including:

- remove existing tall bushes in front of house; and

- add 16'-0" of 12'-0" high arborvitaes.

19.     As is discussed below, Paramount carried out many of the details described in these Work Notes, even though they contradicted the Location Agreement.

20.      On the day before Paramount's access began, Richard Price, met with the Producer of Maniac, Christina Jami Alvarado ("**Alvarado**"), to confirm the details.

4

21.    At the meeting, Alvarado assured Richard Price that filming would be limited the living room, dining room, and kitchen, and no other rooms.

22.    Moreover, Alvarado assured Richard Price that access would be limited only to the first floor.

23.    On September 12, 2018, the first day of Paramount's access, it began to pack up Plaintiffs' belongings into boxes, and then to load them on a truck.

24.    Richard Price demanded that nothing should be loaded on a truck.

25.    A worker at the Residence said, "We're Netflix. We can do what we want."

26.    Richard Price spoke to the police officer who was securing the area, asking for intervention.

27.    The police officer told Richard Price to make a report at the police station.

28.    Richard Price went to the police station in Hewlett New York, whereby a police officer told him his issue with Paramount was a contractual dispute that did not require police intervention.

*Paramount's Unlawful Acts*

29.    As described below, throughout the course of its access to the Residence, Paramount breached the Location Agreement in multiple ways.

30.    Paramount also acted negligently and with willful disregard to Plaintiffs' rights.

31.    Paramount completely disregarded the scope of the agreement, which was limited to use of "only the first floor."

32.    Paramount also took unauthorized footage of the front and side lawns, front porch, and driveway, with approximately eight actors, three automobiles, and a boat used for outside filming.

33.    At no time did Plaintiffs permit such footage to be filmed or used.

34.     Paramount also went on to the staircase and the second floor of the home, even though it was barricaded by large boxes.

35.     These boxes, measuring 25" by 25" by 25", contained valuable memorabilia, which was to be sold through Richard Price's memorabilia business.

36.     Paramount recklessly threw these boxes aside in order to access the second floor.

37.     Their recklessness caused glass contents inside the boxes to break; cardboard items to bend and rip; and other memorabilia items such as posters, footballs, basketballs, baseballs, and guitars, to be damaged.  Each of these items contained autographs from famous persons.

38.     As an example, various posters signed by Harrison Ford were damaged (with an undamaged value of $1500 each).

39.     Paramount also accessed and boxed up contents of the 2-car garage, loading them onto a truck.  Paramount ultimately cleared out most of the garage, which had stored items from floor to ceiling, throughout the entire 2-car space.

40.     At no time did Plaintiffs permit access to the garage.

41.     Nor did they ever permit property to be placed on a truck.

42.     Paramount has lost between twenty to thirty boxes that were placed on three trucks.

43.     Among the missing items are:

- Photos of Sidney Price's parents, aunts, uncles, and other family members, some of whom were Holocaust survivors.  Such photos depicted numbers branded onto their arms by the Nazis while imprisoned in a concentration camp.  Sidney Price now has no such photos to pass down to his grandchildren.

- Other photos of deceased family members.  Sidney Price now has no photos of certain of his loved ones.

- Plaintiffs' wedding photos.

6

- Pictures of Sidney Price and his late wife Lillian Price when they first met more than sixty years ago.

- Sidney Price's grandchildren's Bar and Bat Mitzvah videos and photos.

- Pictures of Sidney Price's grandchildren taken over a twenty-year period at family events, vacations, school graduations, etc.

- Wall photos of Lillian Price.

- A piece of art removed from the wall.

- A chair from the living room.

- Valuable china and other household belongings.

44.     Paramount also removed numerous outdoor bushes measuring 8-10 feet in height, and 15 feet wide.  These bushes were sixty years old.

45.     The bushes were not only beautiful, but also blocked the view from the street to the porch.  Thus, they sheltered memorabilia deliveries from a street view.

46.     Paramount removed these bushes despite protests from Richard Price.

47.     Although Paramount later planted new bushes as replacements, the replacement bushes are only 3 feet tall.  They are unsightly and do not provide the privacy and security that the tall bushes provided.

48.     The replacements were planted by an unlicensed landscaper.

49.     Paramount failed properly to remove the roots from the prior bushes.  As a result, the new bushes are not growing well.

50.     Moreover, on September 15, 2017, Paramount engaged an unlicensed contractor to begin removing windows from the Residence.

51.     Richard Price placed his body in front of the window to prevent their removal.

52.     He remained there for hours, as different persons strongly tried to convince him to let Paramount remove the windows.

53.     That evening, which was a Friday night, Ryan Smith phoned Richard Price at approximately 7:30pm, engaging with him in a heated exchange for approximately 30 minutes regarding window removal.

54.     Richard Price said the windows could not be removed.

55.     Nonetheless, Ryan Smith insisted that the windows would be removed at 5am the following Monday morning.

56.     Richard Price experienced significant stress as a result.

57.     He was rushed to the hospital with chest pain, and suffered from a mild heart attack. He had never before had any heart problems.

58.     Although Richard Price was not discharged from the hospital, he left to ensure that the windows would not be removed.

59.     When he arrived at the Residence, on Monday morning, he was informed that the windows did not need to be removed.

60.     Paramount also caused damaged to the Residence's concrete steps when it brought in a large air conditioning unit.

61.     It also broke the back fence so as to make room for the unit.

62.     Sidney Price timely presented Paramount with itemized damages including the ones specified above.  A copy of his September 29, 2017 letter is attached hereto as Exhibit C.

63.     In response, Paramount hired unlicensed contractors to make certain repairs to the Residence, including electrical repairs, sprinkler repairs and concrete repairs.

64.     Plaintiffs did not consent to the use of unlicensed contractors.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

65.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint as if fully set forth herein.

66.     Sidney Price had a written contract with Paramount.

67.     Paramount breached the contract by exceeding the scope of access and use.

68.     Paramount impermissibly filmed footage on the exterior of the home.

69.     Paramount also impermissibly accessed the garage and second floor of the home, recklessly destroying valuable items.

70.     It also loaded furniture, artwork, and boxes from the first floor and garage and loaded them onto three trucks.

71.     Such items were ultimately lost.

72.     Moreover, it removed bushes and caused the other damage specified above.

73.     Paramount's breach of contract has caused extensive damages to Plaintiffs.

74.     Wherefore, Plaintiffs are entitled to compensatory damages for Paramount's breach of contract.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**

75.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint as if fully set forth herein.

76.     Upon information and belief, Paramount intends to use footage of the outside of the Residence, rights to which it did not obtain through contract.

77.     Paramount's use of such footage will work a windfall to it at the expense of Sidney Price.

78.     Accordingly, Paramount is liable to Sidney Price for unjust enrichment.

9

### THIRD CAUSE OF ACTION
**Trespass to Chattels**

79.     Plaintiffs repeat and reallege all prior paragraphs of this Complaint as if fully set forth herein.

80.     Paramount has caused damage to Plaintiffs' personal property, as described above, by way of intentionally interfering with it, depriving Plaintiffs their rights of use and possession, and thus causing damages to Plaintiffs.

81.     Accordingly, Paramount is liable to Plaintiffs for trespass to chattels.

### FOURTH CAUSE OF ACTION
**Conversion**

82.     Plaintiffs repeat and reallege all prior paragraphs as if fully set forth herein.

83.     In addition to the trespass to chattels as described above, certain of Plaintiffs' personal property, as described above, is completely missing and/or destroyed.

84.     Accordingly, Paramount is liable to Plaintiffs for conversion.

### FIFTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

85.     Plaintiffs repeat and reallege all prior paragraphs as if fully set forth herein.

86.     Defendants' conduct was extreme and outrageous.

87.     The conduct was intended to cause severe emotional distress.

88.     A causal connection exits between the conduct and Plaintiffs' injuries.

89.     Plaintiffs have suffered severe emotional distress, mental anguish, humiliation, emotional pain, physical pain and suffering, convenience, loss of enjoyment of life, and medical expenses.

90.     Accordingly, Plaintiffs are entitled to compensatory, and punitive damages, as well as and attorney's fees and costs.

## SIXTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

91.     Plaintiffs repeat and reallege all prior paragraphs as if fully set forth herein.

92.     Defendants' conduct was extreme and outrageous.

93.     A causal connection exits between the conduct and Plaintiffs' injuries.

94.     Plaintiffs have suffered severe emotional distress, mental anguish, humiliation, emotional pain, physical pain and suffering, convenience, loss of enjoyment of life, and medical expenses.

## SEVERNTH CAUSE OF ACTION
### Negligence

95.     Plaintiffs repeat and reallege all prior paragraphs as if fully set forth herein.

96.     By the acts specified above, Paramount has committed acts of negligence, gross negligence, and willful misconduct.

97.     Paramount owed a duty of care to the Plaintiffs when it entered the Residence.

98.     Paramount breached that duty, causing resulting harm that was the proximate cause of Plaintiffs' damages.

99.     Accordingly, Plaintiffs are entitled to compensatory, and punitive damages, as well as and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

a.     Compensatory damages in an amount to be proven at trial;

b.     Punitive damages;

c.     Attorney's fees and costs;

d.     Pre-judgment and post-judgment interest; and

e.     All other relief that the Court deems just and proper.

Respectfully submitted:

Dated:     July 19, 2018
           Great Neck, NY


           RACHEL SCHULMAN, ESQ. PLLC

           By: /s/ Rachel Schulman
           10 Bond Street, Suite 143
           Great Neck, NY 11021
           (917) 270-7132
           rachel@schulmanpllc.com
           *Attorney for Plaintiffs*

# EXHIBIT A

## LOCATION AGREEMENT

This agreement ("Agreement") is entered into effective as of September 11, 2017 by Sidney Price ("Licensor") whose address is: 729 Sherwood St., Valley Stream, NY 11581 and **Paramount Television, a division of Paramount Pictures Corporation** ("Company"), whose address is: 5555 Melrose Avenue, Los Angeles, California 90038, Attn: Television Legal, in connection with the television production currently entitled "RONALD" (the "Production").

1.     Rights Granted: Licensor hereby grants to Company, its employees, agents, contractors and suppliers, and such other parties as it may authorize or designate, the right to enter and use only the first floor of the property located at 729 Sherwood St., Valley Stream, NY 11581 (the "Property") for the purpose of photographing and filming (whether via motion pictures, still, video, device or other type of photography scenes of the Production, which permission includes access to and from the Property, including the interiors and exteriors thereof, the right to bring and utilize thereon personnel, personal property, material and equipment, the right to photograph and make sound recordings on the Property, including the furniture, fixtures and other contents (and the right to rearrange same), the right to use any names, verbiage, address, trademarks, logos, signs and identifying features located on the Property, the right to refer to the Property or any part thereof by any fictitious name and/or to attribute any fictitious events as occurring thereon, and the right to otherwise do all things reasonably necessary to carry out the production of the Production. Further, Licensor hereby grants to Company the right to re-create and duplicate the interior and exterior of the Property, or any portion thereof, including, without limitation, any and all contents and identifying features located at or on the Property (the "Duplicates"), and Company shall have the right to use and re-use such Duplicates in any manner, whatsoever, at any time and by all means, media, devices, processes and technology now or hereafter known or devised, in perpetuity throughout the universe.

2.     Results and Proceeds: Company shall be the exclusive author, owner and copyright proprietor of all the photography, sound recordings and filmed materials ("Results and Proceeds") relating to Company's use of the Property, and Company may exploit, distribute, use and re-use all such Results and Proceeds in any manner, including, without limitation, in any films, television series, episodes, programs, merchandising, advertising, marketing, publicity, promotions, commercials, trailers or other materials, throughout the universe in perpetuity, in any and all media now known or hereafter devised. Licensor on its own behalf and on behalf of any person or entity having any interest in the Property or any materials located on the Property hereby waives any claims they may have in connection with the use of the Results and Proceeds and/or the Duplicates by Company including, without limitation, claims relating to rights of privacy, rights of publicity, defamation, copyright infringement or trademark infringement. Company shall have the right to assign, transfer and/or grant all or any part of its rights in the Results and Proceeds and/or the Duplicates to any person or entity. Nothing contained in this Agreement shall be construed as obligating Company to actually use the Property, the Duplicates or the Results and Proceeds in or in connection with the Production or in any other manner whatsoever. Licensor shall not make any commercial or other use of the fact that the Property appeared or may appear in the Production or any other productions created by Company.

3.     Term: Access to the Property is granted for 10 day(s), commencing on or about Tuesday, September 12, 2017, and ending on or about Thursday, September 21, 2017 (the "Term"), which such Term shall consist of approximately 4 "prep" day(s), 1 "shoot" day(s), and 3 "wrap" day(s) (as such terms are commonly understood in the television industry), subject to change as required by Company. If Company needs to change the dates of the Term due to weather conditions, a force majeure event and/or a change in the production schedule, no additional payment shall be

due Licensor, provided that there is no increase in the total number of days of the Term.  If additional days are necessary before or after the dates of the Term (which additional days need not be consecutive to the Term), Licensor agrees to make the Property available to Company at a mutually agreeable time (which shall not be delayed or unreasonably withheld) in return for additional payment at the same rate(s) set forth below.  Company may at any time prior to commencement of the Term elect not to use the Property, in which case neither party shall have any further obligations hereunder.

4.      Location Fee:  In full consideration for use of the Property, Company will pay to Licensor the following daily rates for each such day that Company actually uses the Property during the Term, if and as applicable (collectively, the "Location Fee"):

   (i)     One Thousand Five Hundred Dollars ($1,500.00) for each "prep" day;
   (ii)    Five Thousand Dollars ($5,000.00) for each "shoot" day; and
   (iii)   One Thousand Five Hundred Dollars ($1,500.00) for each "wrap" day.

Cumulatively, the Location Fee shall equal the flat sum of Fifteen Thousand Five Hundred Dollars ($15,500.00) in total, which shall be non-refundable.

Unless the parties agree otherwise in writing, the Location Fee will be payable promptly upon Company's arrival at the Property on September 12, 2017.  Licensor acknowledges and confirms that the Location Fee constitutes adequate and sufficient consideration for any inconvenience that may be caused by Company's photography and/or filming of a television production on and around the Property and surrounding area.

5.      Use and Repairs:  Company agrees to leave the Property in as good order as when received by Company, reasonable wear and tear excepted.  Licensor shall submit a written list notifying Company of all claimed damage to the Property within ten (10) business days following the date that Company vacates the Property, and Licensor shall permit Company to inspect the alleged damage, if any.  Provided that Company timely receives a written list of claimed damage and is afforded an opportunity to inspect same, Company shall repair any actual and verifiable damage to the Property directly caused by Company's use thereof (or shall arrange for the repairs to be made by contractors selected by Company), provided, however, that Company shall not be obligated to repair any damage to the Property caused by or contributed to by Licensor.  Company agrees to not smoke inside of the Property.

6.      Licensor Representations and Warranties:   Licensor represents and warrants that Licensor is the owner (or the authorized agent of the owner) of the Property and has the full right and authority to enter into this Agreement, and that the consent of no other party is necessary to effectuate the full and complete permissions and grant of rights made by Licensor herein.  Additionally, Licensor represents and warrants that the Property is in good working condition and has been properly maintained in accordance with all applicable laws and ordinances and all safety and other regulations.

7.      Company Insurance:  Company agrees that Licensor shall be named as an additional insured on Company's Commercial General Liability Insurance, which Company represents has limits of liability of not less than $1,000,000 per occurrence, with respect to claims that arise out of Company's negligence or willful misconduct, and shall provide Licensor a Certificate of Insurance for such policy upon execution of this Agreement.

8.    Remedies:  Licensor's sole remedy for a breach of this Agreement by Company shall be limited to an action at law for money damages, if any.  Licensor shall not have the right to seek to enjoin, restrain or otherwise interfere with the production, distribution, exhibition or other exploitation of the Results and Proceeds, the Production, the Duplicates or the merchandising, advertising or publicity in connection therewith.

9.    APPLICABLE LAW:  THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS OF THIS NATURE, AND LICENSOR HEREBY CONSENTS TO THE JURISDICTION OF SAID STATE.

10.   Complete Understanding: This Agreement contains the full and complete understanding between the parties and supersedes all prior agreements and understandings regarding the subject matter hereof and cannot be modified except by a writing signed by the parties.  This Agreement shall serve to confirm that no representative of Licensor, nor anyone acting on Licensor's behalf, has given, is planning to give or agreed to give anything of value to any employee of Company, any member of the production staff or crew or anyone in any way associated with the Production, in exchange for the use of the Property as provided for hereunder. This Agreement may be signed in counterparts and transmitted via electronic mail and such electronic signature counterparts taken together shall constitute an original binding agreement.

AGREED AND ACCEPTED:

COMPANY:                                          LICENSOR

Sign: _____      Sign: _____

Print: _____      Print: _____Sidney_____PRice____

Title: _LOCATION MANAGER_____      Title: _____

# EXHIBIT B

5/18/18

Rachel:


These notes were left in my house when Paramount left.

Please note the date on the notes - 8/2/17; location agreement dated 9/11/17.

The various items on the notes and other items were done by Paramount and should prove that they had no intention of following the terms of the location agreement.

Please note:

1)   under construction - remove window

2)   Greens - Remove existing tall bushes

Thank you

Richard Price

# RONALD  :   WORK NOTES
## VERSION 2 RELEASED 8/2/17

| SET # | SET NAME: | SCENE #S |
|---|---|---|
| 141-142 | INT/EXT MARINO HOUSE | 4.1 |

| D/N | LOCATION: | |
|---|---|---|
| D | 729 SHERWOOD ST   VALLEY STREAM | |

| PREP: | SHOOT: | WRAP: |
|---|---|---|
| 4 DAYS | 1 DAY | 3 DAYS |

**CONSTRUCTION:**
BUILD OUT ISLAND OFF EXISTING COUNTER- MATCH DETAILS TO EXISTING
REMOVE WINDOW FOR CAMERA POV ** DISCUSS **
CHANGE/FIX FRONT DOOR HARDWARE
FIX EXISTING FRONT DOOR TRIM

**PAINT:**
MATCH COUNTER TOP FINISH
MATCH WOOD STAIN ON COUNTERS
TIE IN NEW PATCH OF SIDEWALK CONCRETE TO EXISTING

**GREENS:**
REMOVE EXISTING TALL BUSHES IN FRONT OF HOUSE
ADD 16'-0" OF 12'-0" HIGH ARBORVITAES

**GRAPHICS/SIGNAGE:**


**DECORATION:**
CHANGE LIGHT IN KITCHEN
DRESS DEN AS KIDS' PLAYROOM
ADD AREA RUG IN DEN
FULL RE-DRESS  FURNITURE PER PLAN
CHANGE HOUSE NUMBER TO 901
FULL RE-DRESS  FURNITURE PER PLAN
ADD CHRISTMAS TREE LIGHTS TO EAVE OF NEIGHBOR'S HOUSE

**PROPS:**
"PARKED" SAILBOAT IN NEIGHBOR'S YARD

**SPFX:**


**VFX:**


**LOCATIONS:**
REQUEST SHAMPOO OF CARPET IN LIVING ROOM/DINING ROOM
REQUEST ACCESS TO NEIGHBOR'S YARD FOR PARKED SAILBOAT AND CHRISTMAS LIGHTS

**OTHER:**

| | |
|---|---|
| | Full dress of kitchen, livingroom, dining room, front hall and part of den |
| **141-INT-** | messy with 3 children |
| | **Kitchen:** |
| **MARINO HOUSEHOLD - LIVING ROOM** | dress in round  kitchen table and chairs |
| **BEDROOM** | Hang light fixture over kitchen table |
| | keep hutch but redress inside |
| | dress kitchen counters with scripted items |
| | remove white cabinet next to hutch |
| | replace wall mount phone |
| | |
| | **Front Hall** |
| | hang artwork, framed family photos 9-10 pieces |
| | exiating artwork range:  15x18, 25x21, |
| | new curtains for doors? 25w x 40h |
| | entry carpet |
| | |
| | **Living Room:** |
| | re-dressing entire room.  Need period stereo, working tv, VCR, remote, |
| | shelves, dressing, boobox, maybe old exercise bike |
| | Framed family photos and baby photos |
| | remove portable basketball hoop across the street |
| | dress fan sprinklers onto lawn |
| | Visual Alchemy TV with playback in LR  (ep 3) |
| | lamps per plan and dp |
| | keep window treatments |
| | recliner (in similar leather to chairs at Neb) |
| | keep piano |
| | keep shelf unit |
| | |
| | **Den:** |
| | dress in toys, curtains, area rug to hide stains, |
| | keep furniture but clean out clutter |
| | make it a den where kids play |
| | 2 windows 39"w x 60"h |
| | |
| | **Dining Room:** |
| | keep sheers and replace curtains (93" to floor, drapery hooks) |
| | redress furniture |
| | replace hanging fixture |
| | |
| **142-EXT-** | sceniced galvanized garbage cans |
| **MARINO HOUSEHOLD** | toys for lawn, tricycles |
| | Change house number to 19 or 109 |
| | Need front door hardware |
| | go cart at base of basketball hoop across the street |
| | hang mailbox |
| | decorative flag |
| | old school colord christmas lights for house next door |
| | remove portable basketball hoop across the street |

# "RONALD" - PARAMOUNT PICTURES

| SHOP: 718-433-4650 | SET DEC/PRODUCTION OFFICE: 718-906-2531 |
|---|---|
| 47-00 NORTHERN BLVD | SILVERCUP STUDIOS |
| LIC, NY 11101 | 42-22 22ND ST 3RD FL LIC, NY 11101 |

## SET DRESSING:

| Tim Metzger | Leadman | 908-305-4920 | metzgersetdressing@gmail.com |
|---|---|---|---|
| Ana Lombardo | Shop Foreman | 917-847-7754 | anaprops@gmail.com |
| Steve Duke | 2nd Dresser | 917-449-2762 | stevenotes@gmail.com |
| Tonero Williams | On Set Dresser | 718-578-5416 | lotion@verizon.net |
| Candis Heiland | Set Dresser | 917-544-9790 | candyheiland@gmail.com |
| Roman Greller | Set Dresser | 917-952-4607 | rgreller@verizon.net |
| Dan Decelle | Set Dresser | 201-665-5387 | dandecelle@yahoo.com |
| Joe Tagliarino | Set Dresser | 347-668-0180 | olajesurf@gmail.com |
| John Souto | Set Dresser | 917-868-6427 | johnsouto@mac.com |
| Peter Mills | Set Dresser | 914-261-0159 | pmills@gmail.com |
| Janine Pesce | Set Dresser | 917-209-5475 | jpesce12@gmail.com |
| Joe Petruccio | Set Dresser | 914-318-3076 | josephpetruccio@mac.com |
| Dave Reardon | Set Dresser | 917-656-0825 | daveyjonj1@icloud.com |
| Shane Strano | Set Dress PA | 908-487-8485 | shaneclairestrano@gmail.com |

## PROD DESIGNER/SET DEC:

| Alex Digerlando | Prod Designer | 908-875-3335 | adigerlando@gmail.com |
|---|---|---|---|
| Lydia Marks | Set Decorator | 917-673-3872 | lydiamarks@gmail.com |
| Lisa Nilsson | Asst Set Dec | 914-806-2637 | lisa.nilsson @verizon.net |
| Joanne Ling | Asst Set Dec | 212-729-9252 | joannedling@gmail.com |
| Kate Yatsko | Asst Set Dec | 917-656-1042 | kyatsko@gmail.com |
| Theo Sena | Asst Set Dec | 917-721-5925 | theosena@gmail.com |
| Courtney Webster | Set Dec Coord | 917-929-2600 | cw7117@me.com |
| Cara Gelbard | Set Dec PA | 301-908-7132 | cara.gelbard@gmail.com |

| TRUCK 1: | EDGE # 2200 | Driver: | Mike  631-766-6586 | Helper: Eddie  347-533-3771 |
|---|---|---|---|---|
| TRUCK 2: | EDGE # 2162 | Driver: | Bryan 718-578-7184 | Helper: Malik  917-331-0623 |
| TRUCK 3: | HADDAD # 626 | Driver: | Joe 917-714-0267 | Helper:Eddie  551-265-0708 |

# EXHIBIT C

September 29, 2017

Sidney Price
729 Sherwood St
Valley Stream, NY 11581

To:

Paramount Television, a division of Paramount Pictures Corporation
5555 Melrose Avenue
Los Angeles, California 90038

Attn: Television Legal

Re: Location Agreement dated 9/11/17
    Ronald Production

Dear Sir or Madam:

It is imperative that Paramount Television promptly notify insurance company, noted
in paragraph 7 of the Location Agreement, with respect to our claim of damages.

It is also imperative that Paramount Television promptly search for our missing items.

In accordance with paragraph 5, Use and Repairs of the Location Agreement
we are enclosing a list of damages, consisting of six (6) pages as follows:

A    General

      1    Paramount Television exceeded the rights granted under
            paragraph 1 of the Location Agreement.
            As an example, by using areas of the home not authorized.

      2    Paramount Television removed a substantial amount of furniture
            and personal items  from the home,  also disassembled furniture
            and then removed it from the home.

      3    Personal items of Paramount have been commingled with our personal
            items.  Personal items of Paramount were left in our home and,
            based upon observations Paramount retained some of our personal items.

Re: Location Agreement dated 9/11/17
   Ronald Production

   Page 2 of 6

**A**   General (continued)

     4   Since doors and windows were left open all day for eight (8) days
           we believe an exterminator is warranted.

**B**   Outside front of house

     1   Various bushes were removed.
     2   Sprinkler in bushes was damaged .
     3   House numbers were removed and are missing.

**C**   2nd Floor

     1   Access to or use of 2nd floor was not granted in the Location Agreement and
           access to the 2nd floor was completely blocked off by us, using many large
           heavy boxes.

           The bedroom doors and bathroom door on the 2nd floor were closed
           and there were boxes in the halls making the hallways unpassable.

     2   Paramount moved the heavy boxes and due to lack of space haphazardly
           threw the boxes everywhere without regard to their resting place, without
           regard to their content, and without regard to their value which are substantial.

     3   Bedroom and bathroom doors were opened and boxes from the hallways were
           put on top of other valuable items without regard to damage.

     4   Paramount's  equipment and film crew were also on the 2nd floor .

     5   Various items were damaged and or destroyed including family pictures;
           there was a substantial amount of broken glass at the top of the steps from
           broken picture frames.

     6   As of this writing we have not completely inspected the 2nd floor .

Re: Location Agreement dated 9/11/17
    Ronald Production

    Page 3 of 6

**D**    **Den**

    1    Missing cable box
    2    Missing 6 family VHS videos, pictures & other items as shown in the picture

    3    Missing 6 family photos that were on wall behind television
    4    Missing yellow art piece on wall next to light switch
    5    Missing picture - left side of mirror
    6    Carpet stain caused by coffee spilled by crew on 9/14/17
        Carpet cleaners, who were in our home on 9/27/17,  advised us they were not
        told to clean the stain.

        Paramount representative, who was also in our home,  informed us she was not
        authorized to have the stain cleaned.

    7    Paramount returned to us a chair that was not ours.  Does Paramount have our chair?

**E**    **Dining Room**

    1    Please adjust curtains to their original position
    2    Light fixture hook was opened but not closed
    3    Bowls on top of hutch are missing
    4    Various items on top of table are missing as per picture
    5    Lamp shade for small lamp missing
    6    Hutch - as of this writing its difficult to determine if items are missing.

**F**    **Living Room**

    1    The Glass top of a vintage television console was cracked
    2    Many family pictures of various generations, many from the 1950's
        and 1960's  that were under the glass top of the television are missing.
    3    Crew could not locate where to place glass table tops that were in the truck
        with our items -  are there missing tables?

Re: Location Agreement dated 9/11/17

    Ronald Production

    Page 4 of 6

**G**    **Kitchen**

    1    2 incorrect handles were installed on cabinets

    2    Shade over sink does not go up properly & wood attached to shade has to be attached.

    3    Light dimmer knob given to us by Paramount in lieu of misplaced knob does not fit

    4    Based on pictures & observations various items are missing from hutch

    5    Toaster oven missing

**H**    **Side of house**

    1    Wood gate and fence were damaged and partially repaired; however, clearly not "in as good order when received"  condition as stated in paragraph 5 of the Location Agreement.

**I**    **Garage**

    1    Garage was completely full, including numerous empty boxes which we need. Boxes were removed and are missing;  other items may also be missing.

**J**    **Bathroom & Kitchen Sink**

    1    A member of your crew stuffed up the toilet the week before filming. Your crew purchased a plunger to enable the toilet to flush. Toilet now requires multiple flushes.

    2    Monday night after the shoot the kitchen sink was left with kitchen type items (fork, gloves, soap, brushes, towels, rags  and sponges) in the sink which the crew did not clean up.

        There was also food in the kitchen sink & drain (what appeared to be lettuce type items and toasted bread)

        We cleaned the sink and removed as much food from the drain as we could; It appears someone may have washed food down the drain, perhaps believing it was a garbage disposal - it was not.

Re: Location Agreement dated 9/11/17

     Ronald Production

     Page 5 of 6

**J**     **Bathroom & Kitchen Sink (continued)**

     3     The toilet & sink are in the same general area
          and both are partially clogged up

     4     Please reinstall our toilet seat, it was replaced by a padded one

**K**     **Front Door**

     1     Part of the top sliding bolt was broken off by crew and replaced with a screw;
          door now hits the screw when opened or closed and 2nd door does not open.

**L**     **Storm Door**

     1     Missing screw in handle installed by Paramount

**M**     **Front Hall**

     1     Steps - missing various items that were on the steps

**N**     **Back Hall**

     1     damaged door shade

**O**     **Backyard**

     1     Covers of 3 pop up sprinkler heads were broken off
     2     Stone piece cracked
     3     What we believe are parts of the steps that were broken were placed
          in the bushes in the back of the house - requires clean up
     4     Table, chairs or other items that Paramount moved from the patio to the
          grass were not returned -   we moved them back

Re: Location Agreement dated 9/11/17

    Ronald Production

      Page 6 of 6

P     Other

        1     Based upon Paramount pictures submitted to us and our observations many of our personal items are missing, which we are not listing, due to its minimal value; in aggregate however, the value may not be minimal.

        2     People were observed smoking , contrary to Location Agreement.

It is imperative that all damaged items are repaired and all missing items are returned to us within ten (10) business days following the receipt of this list of damages or we will exercise all legal options available to us.

Thank you

Sidney Price